UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELTON LOVE, JR.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RICK M. HILL, et al.,<br><br>　　　　　Defendants. | No.  2:22-cv-1233 TLN AC P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff, a state prisoner proceeding through counsel, seeks relief pursuant to 42 U.S.C. § 1983 and state law and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.

　　I.　　Application to Proceed In Forma Pauperis

　　　　Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).  ECF No. 2.  Accordingly, the request to proceed in forma pauperis will be granted.

　　　　Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account.

These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

## II. Complaint

### A. Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'"  Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citations omitted).  "[T]he pleading must contain

2

something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

B. Allegations

Plaintiff alleges that defendants Hill, Davis, Johnson, Heckman, Mejia, O'Connor, Barton, Gelein, O'Hagan, Viera, Harris, Hough, Strand, Martinez-Lucatero, Waterhouse, Aguilar, Bick, and Stilwell violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments and article 1, section 7 of the California Constitution and that they are in violation of California Government Code § 19572.[1] ECF No. 1. Plaintiff alleges that defendants are attempting to "enforce an UNDERGROUND REGULATION to place Plaintiff with known enemies and others who possibly would cause him harm or death," and that enforcing an underground regulation is

---

[1] The court notes that the complaint is perilously close to constituting a "shotgun" or "kitchen sink" complaint and violating Federal Rule of Civil Procedure 8(a)(2)'s requirement that a complaint contain a "short and plain statement . . . showing that the pleader is entitled to relief." Despite the complaint being forty-seven pages in length, the causes of action and their supporting facts are poorly defined, and as discussed below, fail to state any cognizable claims. "The plaintiff who files a kitchen-sink complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. . . . It is the plaintiff['s] burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." Gurman v. Metro Hous. & Redevelopment Auth., 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).

unlawful under the Administrative Procedures Act. Id. at 9, 12.

Plaintiff asserts that Hill, Johnson, and Heckman allowed their subordinates to classify plaintiff for transfer to a Non-Designated Programming Facility (NDPF), which are housing facilities that merge sensitive needs prisoners like plaintiff and general population prisoners, while Harris and Hough classified plaintiff for transfer to an NDPF on September 30, 2020, and Davis endorsed plaintiff for transfer to an NDPF over plaintiff's objections. Id. at 2, 14-18. In doing so, these defendants failed to protect plaintiff's rights to file grievances without repercussions, be free from double jeopardy and cruel and unusual punishment, and remain silent to avoid self-incrimination as made applicable to the states under the Fourteenth Amendment, as well as his due process rights under article 1, section 7 of the California constitution. Id. at 14-18.

As a result of the transfer endorsement, Mejia issued plaintiff a rules violation report (RVR) on November 25, 2020, for refusing to transfer to a NDPF. Id. at 19-20. The RVR was signed off on by O'Connor. Id. at 21. On December 2, 2020, Barton, who was assisted by Heckman, found plaintiff guilty as charged despite knowing that plaintiff feared for his life, that the transfer would violate plaintiff's civil rights, and that the transfer would "possibly expose Plaintiff to known enemies and others who would possibly cause him harm or death." Id. at 22-23. The RVR and punishment plaintiff received violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments and the California constitution. Id. at 21-23.

Plaintiff filed grievances related to his transfer to an NDPF and the RVR he received, both of which were denied by Johnson. Id. at 19, 23, 25-26. As Chief Deputy Warden, Johnson knew or should have known that the attempt to transfer plaintiff was illegal and put plaintiff's life in danger, and that his refusal to transfer and any statements regarding his need to hurt someone in self-defense were therefore not a rules violation. Id. at 24-26. The denial of the grievance breached Johnson's duty to protect plaintiff from harm and caused plaintiff to be punished for the RVR and suffer a loss of privileges. Id.

On February 23, 2021, Mejia issued plaintiff another RVR for refusing to transfer to an NDPF. Id. at 26. The RVR was signed off on by Gelein and resulted in plaintiff being punished for a violation he did not commit. Id. at 27. Martinez-Lucatero was assigned as the investigative

4

employee and issued an RVR supplement noting her assignment, the questions plaintiff provided, and the responses to those questions. Id. at 27-28. Plaintiff alleges that Martinez-Lucatero had no authority to issue him an RVR and caused him to be punished for a violation he did not commit. Id. at 29. O'Connor found plaintiff not guilty of the violation and the verdict was approved by Heckman. Id. at 30.

After the hearing, O'Connor issued an informational chrono stating that he had been directed by Viera to interview plaintiff regarding possible enemy or safety concerns at the facility he refused to be transferred to because of comments made during the disciplinary hearing. Id. at 30-31. During the interview, plaintiff stated that he was affiliated with a gang, that he had an enemy concern with any drop out gang member, and that if he had to go to a sensitive needs yard or an NDPF he would have to hurt someone or they would hurt him and that it could get him killed on the streets, but he was unable to name any specific person at the facility that he considered an enemy. Id. at 31. O'Connor should have refused the order to re-interview plaintiff on the same offense because it was an unlawful order. Id. On March 23, 2021, based on plaintiff's responses at the interview, O'Connor issued plaintiff an RVR, which was signed off on by Rogers, for behavior that could lead to violence. Id. The RVR charged plaintiff with the same statement for which he was found not guilty at the previous hearing and caused him to be punished for a violation he did not commit. Id. at 32. O'Hagan found plaintiff guilty of the RVR despite knowing it was unlawful to charge him for the same offense for which he had already been found not guilty and violated plaintiff's rights by finding him guilty of a violation he did not commit. Id. at 33. Heckman issued the disciplinary hearing results finding plaintiff guilty and violated plaintiff's rights because he knew the charges should have been dismissed and that it was unlawful to place plaintiff in double jeopardy. Id. Strand and Viera further violated plaintiff's rights by issuing a classification committee chrono that reflected that plaintiff was disciplined for at least 120 days despite knowing that there was no evidence that plaintiff violated the rule and that he had previously been found not guilty. Id. at 34-35. Plaintiff alleges that the conduct of Strand, Viera, O'Connor, and Rogers was part of a conspiracy to charge him with a false

////

violation. Id. at 35. Plaintiff filed an appeal regarding the March 23, 2021 RVR that was later denied by Johnson. Id. at 34, 36.

On December 22, 2021, Waterhouse issued plaintiff an RVR for refusing to accept a housing assignment, this time assignment to a sensitive needs yard. Id. at 38. The RVR was reviewed by Aguilar and classified by Rogers and resulted in plaintiff's constitutional rights being violated. Id. Waterhouse, Aguilar, Rogers, Martinez-Lucatero, Bick, and Stilwell were all involved in plaintiff guilty of the RVR and therefore deprived him of his constitutional rights. Id. at 38-39.

Plaintiff alleges that he has suffered severe emotional distress and mental anguish due to the fear of being transferred to an NDPF where he may be killed by debriefed gang members and the loss of privileges due to the disciplinary convictions. Id. at 40-42.

    C.    Failure to State a Claim

        i.    Personal Involvement

"Liability under § 1983 must be based on the personal involvement of the defendant," Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted). Furthermore, "[t]here is no respondeat superior liability under section 1983," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted), and plaintiff has not alleged facts showing either Hill's personal involvement in the violation or a causal connection between Hill's conduct and the violation, see Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). It appears that Hill has been named as a defendant based solely on his position as warden, which is insufficient to state a claim for relief. To the extent plaintiff may be attempting to state a claim against Hill based on the implementation of the policy creating NDPFs, he has not alleged facts demonstrating that the "policy [is] so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation and internal quotation marks omitted), abrogated in part

on other grounds by <u>Farmer v. Brennan</u>, 511 U.S. 825, 836-38 (1970).

                ii.    <u>Free Speech</u>

Plaintiff claims that his refusal to transfer to an NDPF was an exercise of his right to free speech under the First Amendment and that he was disciplined as a result. ECF No. 1 at 41. However, refusing a housing assignment does not constitute protected speech. See <u>Banks v. Pelayo</u>, No. 1:20-cv-0117 JLT, 2021 WL 675310, at *2, 2021 U.S. Dist. LEXIS 32699, at *3 (E.D. Cal. Feb. 22, 2021) (refusing a cell mate is not protected conduct) (collecting cases), <u>adopted</u>, 2021 WL 1238232, 2021 U.S. Dist. LEXIS 65152 (E.D. Cal. April 2, 2021), <u>aff'd</u>, 2022 WL 874640, 2022 U.S. App. LEXIS 8214 (9th Cir. Mar. 24, 2022). Plaintiff therefore fails to state a claim for violation of his right to free speech.

                iii.    <u>Retaliation</u>

Plaintiff alleges generally that he was denied the right "to file grievances without repercussions." ECF No. 1 at 14. To the extent he is attempting to assert a claim for retaliation, a viable First Amendment claim for retaliation must establish the following five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted). Plaintiff has failed to allege facts showing that any defendant retaliated against him for filing grievances. To the extent that he is alleging the RVRs he received for refusing housing assignments were retaliatory, as addressed above, the refusal of a housing assignment is not protected conduct.

                iv.    <u>Double Jeopardy</u>

Plaintiff asserts that he was subject to double jeopardy because was charged twice for the same offense for which he had already been found not guilty. ECF No. 1 at 33, 41. However, the facts alleged do not establish that plaintiff was charged twice for the same offense. Plaintiff was initially charged with refusing to transfer to an NDPF on February 23, 2021. <u>Id.</u> at 26. Based on comments he made about enemy concerns at the hearing, at which he was found not guilty, he

was later interviewed to follow-up on his safety concerns. Id. at 30-31. During that interview, plaintiff stated that if he was transferred, he would have to hurt someone or they would have to hurt him, and he was issued an RVR for behavior that could lead to violence based on those statements. Id. at 31. The conduct serving the basis for the two RVRs was therefore not the same. Moreover, even if plaintiff had been charged twice for the same offense, disciplinary proceedings are not criminal prosecutions, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and the Double Jeopardy Clause therefore does not apply to repeated disciplinary hearings, see, e.g., Meeks v. McBride, 81 F.3d 717, 722 (7th Cir. 1996); Lucero v. Gunter, 17 F.3d 1347, 1351 (10th Cir. 1994). Plaintiff therefore cannot state a claim for violation of his right to be free from double jeopardy based on his prison disciplinary charges.[2]

     v.  Deliberate Indifference

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (alteration in original) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). However, a prison official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal quotation marks and citations omitted). Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). He must then fail to take reasonable measures to lessen the substantial risk of serious harm. Id. at 847.

To the extent plaintiff alleges that his Eighth Amendment rights were violated because defendants were negligent in their duties and did not follow state law, he fails to state a claim.

---

[2] The court notes that the complaint also references plaintiff's right to be free from self-incrimination (ECF No. 1 at 14), which also arises under the Fifth Amendment, but there are no discernable facts to support such a claim.

See id. at 835 (negligent failure to protect an inmate from harm is not actionable under § 1983); Samson v. City of Bainbridge Island, 683 F.3d 1051, 1060 (9th Cir. 2012) ("not every violation of state law amounts to an infringement of constitutional rights"). Plaintiff also fails to state a claim against any defendant for violation of his Eight Amendment rights based on attempts to transfer him to an NDPF.

The allegations in the complaint regarding the attempts to transfer plaintiff to an NDPF are both vague and conclusory. Although plaintiff identifies himself as a sensitive needs prisoner (ECF No. 1 at 2), he later alleges that he refused to be transferred to a sensitive needs yard and that such a move would put his life at risk (id. at 31, 38), making it unclear whether he is claiming that transfer to an NDPF is inappropriate because he is a sensitive needs prisoner who requires additional protection. Plaintiff also fails to allege anything more than a generalized fear of assault if he is transferred to an NDPF, based on his claim that as an affiliated gang member he will be at risk of assault from debriefed gang members on the NDPF. However, plaintiff fails to allege facts demonstrating that he would be transferred to an NDPF that also housed former members of his gang,[3] and when plaintiff was questioned about specific individuals who posed a threat to his safety, he failed to identify any. The facts in the compliant are therefore insufficient to show that any defendant was aware of a substantial risk to plaintiff's safety and failed to act reasonably in the face of that risk.

### vi.   Due Process

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556 (citation omitted). Rather, with respect to prison disciplinary proceedings that include the loss of good-time credits, an inmate must receive (1) twenty-four-hour advanced written notice of the charges against him, id. at 563-64; (2) "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action," id. at 564 (internal quotation marks and citation

---

[3] Plaintiff's declaration in support of his motion for a preliminary injunction specifies that he is "an affiliated and documented Crip gang member" and that debriefed Crip members pose a threat to him. ECF No. 3 at 11.

omitted); (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," id. at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a sufficiently impartial fact finder, id. at 570-71. A finding of guilt must also be "supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985).

Plaintiff fails to state a claim for violation of his due process rights with respect to the RVR for which he was found not guilty because he did not lose any good-time credits as a result of the RVR. While the exhibits to the complaint reflect that plaintiff did lose good-time credits in relation to his other two disciplinary violations, plaintiff is not entitled to relief based on this fact alone. He must also demonstrate that he was denied one of the procedural protections outlined in Wolff. The complaint contains no such facts. While it appears that plaintiff may be attempting to allege an absence of "some evidence" to support the guilty findings, the allegations fail to support such a claim. Rather than alleging a complete lack of evidence, the complaint reflects plaintiff's disagreement with the fact-finder's interpretation of his conduct. Plaintiff's admitted statements and refusal to accept transfer constitute "some evidence" within the meaning of Hill.

To the extent plaintiff appears to be alleging his rights were violated by false charges, these allegations do not support a claim under 42 U.S.C. § 1983. See Buckley v. Gomez, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (prisoners have no constitutional right to be free from wrongfully issued disciplinary reports), aff'd without opinion, 168 F.3d 498 (9th Cir. 1999); accord, Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984). As long as prison disciplinary charges are supported by "some evidence," due process is satisfied. Hill, 472 U.S. at 454.

### vii. Grievances

To the extent plaintiff is attempting to state due process claims against Johnson for the denial of his appeals, prisoners do not have "a separate constitutional entitlement to a specific prison grievance procedure," Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)), and these claims necessarily fail. Furthermore,

while plaintiff does have a First Amendment right to petition, which includes a right to pursue available prison administrative remedies, O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir. 1996); see also Assyd v. Ariz. Dep't of Corr., 745 F. App'x 773, 774 (9th Cir. 2018) ("The district court erred by construing [the allegation that an officer refused to accept prisoner's grievance] as a due process claim rather than a First Amendment claim." (citing O'Keefe, 82 F.3d at 325)), there are no facts showing that plaintiff's right to petition was infringed. The facts clearly show that plaintiff was able to file his appeals. That his appeals were denied does not mean that he was denied the right to petition.

                viii.    Conspiracy

Plaintiff alleges generally that defendants Strand, Viera, O'Connor, and Rogers were part of a conspiracy to charge plaintiff with a false rules violation because they participated in charging plaintiff and knew the charges were not true. ECF No. 1 at 35. However, plaintiff must allege facts sufficient to demonstrate that there was an agreement among the parties to cause plaintiff injury. See Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (to state a claim for conspiracy under § 1983, plaintiff must allege facts demonstrating "an agreement or meeting of the minds to violate constitutional rights." (citation and internal quotation marks omitted)). Conclusory and speculative allegations of a conspiracy, such as those made by plaintiff here, are insufficient. See Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level." (citations omitted)); Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient." (citations omitted)).

                ix.    State Law Claims

Because plaintiff has failed to state a cognizable claim for relief under federal law, this court should decline to exercise supplemental jurisdiction over plaintiff's state law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 & n.7 (1988) (when federal claims are eliminated before trial, district courts should usually decline to exercise supplemental jurisdiction). Moreover, to the extent plaintiff is seeking monetary damages for the violation of his due process rights under article 1, section 7 of the California constitution, "[t]here is . . . no

right to sue for monetary damages under this constitutional provision." Bradley v. Med. Bd., 56 Cal. App. 4th 445, 462-63 (1997) (citing Bonner v. City of Santa Ana, 45 Cal. App. 4th 1465, 1476 (1996); Gates v. Superior Court (Hirata), 32 Cal. App. 4th 481, 516-25 (1995)). Plaintiff has also failed to alleged compliance with the Government Claims Act. See State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240, 1237 (2004) (for claims against the state, timely presentation of a claim under the Government Claims Act is an element of the cause of action and must be pled in the complaint).

       D.      Leave to Amend

The complaint does not state any cognizable claims for relief and plaintiff will be given an opportunity to file an amended complaint. If plaintiff chooses to file a first amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Also, the complaint must allege in specific terms how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

    III.    Motion for Temporary Restraining Order

Plaintiff has filed a motion for a temporary restraining order in which he requests an order preventing his transfer to an NDPF yard. ECF No. 3. He has also filed an amended declaration in support of his motion for preliminary injunction. ECF No. 11.

A temporary restraining order is an extraordinary measure of relief that a federal court may impose without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7

1  (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary
2  injunctions is "substantially identical").
3        "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on
4  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the
5  balance of equities tips in his favor, and that an injunction is in the public interest." Winter v.
6  Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (citations omitted).  The propriety of a request
7  for injunctive relief hinges on a threat of irreparable injury that must be imminent in nature.  See
8  Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury
9  does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."
10  (citing Goldie's Bookstore, Inc. v. Superior Ct., 739 F.2d 466, 472 (9th Cir. 1984))).
11        Because plaintiff has failed to state a claim for relief, he cannot show that he has any
12  likelihood of success sufficient to warrant a temporary restraining order.  Furthermore, although
13  plaintiff claims that his life will be in danger if he is transferred to an NDPF, he fails to provide
14  evidence that he is in fact set to be transferred to an NDPF.  See Herb Reed Enters., LLC v. Fla.
15  Entm't Mgmt., Inc., 736 F.3d 1239, 1251 (9th Cir. 2013) ("Those seeking injunctive relief must
16  proffer evidence sufficient to establish a likelihood of irreparable harm."); Caribbean Marine
17  Serv., 844 F.2d at 674.  ("A plaintiff must do more than merely allege imminent harm sufficient
18  to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to
19  preliminary injunctive relief." (emphasis in original) (citing Los Angeles Mem'l Coliseum
20  Comm'n v. Nat'l Football League, 634 F.2d 1197, 1201 (9th Cir. 1980))).  The exhibits provided
21  in support of the complaint indicate that plaintiff is considered to pose an unreasonable risk if
22  housed on an NDPF.  ECF No. 5 at 91.
23        Furthermore, though plaintiff's supplemental declaration states that transfer to an NDPF
24  was discussed at his most recent classification committee, he does not state the outcome of that
25  discussion.  ECF No. 11 at 2.  Plaintiff also states that though defendant Mejia told him that he
26  was being transferred to an NDPF, upon arrival at R&R plaintiff was told that there was no
27  transfer order and directed to go back to his building.  Id. at 2-3.  While Mejia's alleged conduct
28  may be unprofessional and inappropriate, it does not appear that there is an order for plaintiff's

transfer to an NDPF or that he is in any danger of being transferred absent such an order. Moreover, even if plaintiff is approved for transfer to an NDPF, he has not presented any evidence that receiving institution houses former members of his gang, which is the group he identifies as posing a threat to his safety.  ECF No. 3 at 11.

For all these reasons, the motions for a temporary restraining order should be denied.

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's complaint fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A, and will not be served.

4. Within thirty days from the date of service of this order, plaintiff may file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

IT IS FURTHER RECOMMENDED that plaintiff's motion for a temporary restraining order (ECF No. 3) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judges Findings

////
////
////

14

and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 12, 2022

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE